## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| TURNESHIA HARTSFIELD and ROBIN DOMRZALSKI, individually and on behalf of all others similarly situated,<br><br>       *Plaintiffs*,<br><br>  v.<br><br>HUFFY CORPORATION<br><br>       *Defendants*. | Case No.:<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Turneshia Hartfield and Robin Domrzalski ("Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit the following Complaint against Defendant, Huffy Corporation (Defendant), and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action lawsuit as individuals who purchased Defendant Huffy Corporation's Ride on Tonka Dump Trucks (hereinafter "Products" or "Tonka Dump Trucks") for normal household use.

2. Major retail outlets such as Target and Sam's Club sell the Tonka Dump Trucks at their retail stores and online.

3. As such, these Tonka Dump Trucks are distributed, marketed, and sold by

Defendant to consumers across the United States.

4.    Unfortunately, the Products are defective because the controller on the Tonka Dump Trucks can overheat during its use posing a burn hazard to the children operating the ride on toy[1].

5.    The Recall applies to approximately 23,600 Tonka Dump Trucks that were manufactured and sold between June 2023 through March 2025 at an approximate price of $300[2].

6.    The date codes for the recalled Products are printed on a label located on the bottom of the toy truck.

7.    The Product is defective because the controller of the Tonka Dump Truck can overheat.

8.    Other manufacturers formulate, produce, and sell non-defective ride on children's toys with production methods that do not cause the Products to overheat and potentially catch fire, which is evidence that the fire risk inherent with Defendant's Products is demonstrably avoidable.

9.    Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated, designed, and manufactured.

10.    Plaintiffs purchased the Product, while lacking the knowledge that the Product could have its controller overheat creating a fire risk and exposing children to a possible burn hazard.

11.    All consumers who purchased the worthless and dangerous Products have suffered losses.

12.    As a result of the above losses, Plaintiffs seek damages and equitable remedies on

---

[1] https://www.cpsc.gov/Recalls/2025/Huffy-Recalls-Childrens-Ride-On-Tonka-Dump-Trucks-Due-to-Fire-and-Burn-Hazards (last accessed on April 29, 2025)
[2] https://www.cpsc.gov/Recalls/2025/Huffy-Recalls-Childrens-Ride-On-Tonka-Dump-Trucks-Due-to-Fire-and-Burn-Hazards  (last accessed on April 29, 2025)

behalf of themselves and the putative class.



## PARTIES

13.     Plaintiff Turneshia Hartsfield is a resident and citizen of Katy, Texas. Katy is located in Harris County.

14.     Plaintiff Domrzalski is a resident of Roscoe, Illinois.   Roscoe is located in Winnebago County.

15.     Defendant Huffy Corporation is a US corporation organized and existing under the laws of the State of Ohio with its principal place of business and designated place for service

of process is located at 8877 Ganter Creek Drive, Miamisburg, OH 45342. Patrick Schlembach is its Registered Agent.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d).

17. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given that the Defendant has conducted substantial business in this judicial district and in the State of Ohio.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that the distribution and sale of the defective product occurred within this District.

## FACTUAL ALLEGATIONS

19. On April 24, 2025, the CPSC issued a recall for Huffy's ride on Tonka Dump Truck.

20. The Tonka Dump Truck is a ride on children's toy that is powered by a 12-volt battery. The ride on toy is capable of supporting two children during its normal use.

21. Defendant has received reports of incidents involving the Tonka Dump Truck's controller overheating exposing children to fire risks and burn hazards.

22. The Tonka Dump Truck is sold online and in major retail outlets such as Target and Sam's Club.

23. At this time, Huffy is offering a replacement remedy and are not offering refunds[3].

---

[3] https://www.huffy.com/tonka-ride-on-toy-recall (last accessed on April 29, 2025)

24.     Plaintiff Hartsfield purchased the Product as "new" and intended it for ordinary use.

25.     Plaintiff Hartsfield reports purchasing the Tonka Dump Truck from Sam's club.

26.     Plaintiff Hartsfield reports experiencing problems with the Tonka Dump Truck after purchase.

27.     Plaintiff Domrzalski reports purchasing two Tonka Dump trucks for her grandchildren.

28.     Plaintiff Domrzalski reports one of the Tonka Dump Trucks was defective as it started "smoking".

### *Defendants' Misrepresentations and Omissions are Actionable*

29.     Plaintiffs bargained for a Product that was safe to use. Defendant's Products were, and are, unsafe. As a result of the fire risk while using the Tonka Dump Truck toy, Plaintiffs, and all others similarly situated, were deprived the basis of their bargain given that the Defendant sold them a product would not overheat exposing their children to a burn hazard during ordinary use. This dangerous fire risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

30.     The Products are not fit for their intended use by humans as they expose consumers to a fire hazard. Plaintiffs are further entitled to damages for the injury sustained in being exposed to such danger, damages related to the Defendants' conduct, and injunctive relief.

31.     Plaintiffs seek to recover damages because the Products are adulterated, defective, worthless, and unfit for ordinary use due to the risk of catching fire.

32.     The Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of catching fire affecting the Products.

33. Indeed, no reasonable consumer, including Plaintiffs, would have purchased the Products had they known of the material omissions of material facts regarding the possibility of the Products overheating and catching on fire.

34. Plaintiffs bought their Tonka Dump Truck for personal use for children and/or grandchildren.

35. Plaintiffs intended to purchase a Product that would be safe for normal use but instead was sold a dangerous fire hazard.

36. If Plaintiffs had been aware of the risk fire in the Tonka Dump Truck, they would not have purchased the Product or would have paid significantly less.

37. As a result of the Defendant's actions, Plaintiff has incurred damages.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **All persons within the United States who purchased Huffy's ride-on Tonka Dump Truck with Model Numbers 17323 and 17362 within the statute of limitations**.

39. This Nationwide Class shall be referred to herein as the "Class."

40. Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

41. Excluded from the Class and Sub-classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

42.     The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

43.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.     The proposed Class is so numerous that the joinder of all members is impracticable.

45.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

46.     **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process. Preliminary estimates suggest that 23,000 units are subject to recall. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

47.     **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiffs' claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the conduct described herein. Moreover, Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of

action and upon the same facts as the other members of the proposed Class and Sub-class.

48.     **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiffs will fairly and adequately protect the interest of the members of the Class. Plaintiffs and the members of the Class were all consumers of a defective product posing a fire hazard. Plaintiffs will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiffs.

49.     **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiffs and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

50.     Plaintiffs seek monetary damages, including compensatory damages on behalf of

the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

51. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a. Whether the controller of the Tonka Dump Truck ride-on toy is susceptible to overheating;

b. Whether Defendants' wrongful retention of Plaintiffs and Class Members' payments was an act of conversion;

c. Whether Defendants breached its contract with the Plaintiffs by failing to refund Plaintiffs' payments upon the announcement of the recall;

d. Whether Defendants' retention of Plaintiffs and Class Members' payments was a violation of Defendants duty of good faith and fair dealing;

e. Whether Defendants were unjustly enriched as a result of retaining and refusing to refund Plaintiffs and Class Members' payments upon the recall announcement;

f. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

g. Whether Plaintiffs and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

## CAUSES OF ACTION

## COUNT I

## UNJUST ENRICHMENT

52.     Plaintiffs incorporate the allegations set forth in previous Paragraphs as though set forth fully herein.

53.     Plaintiffs brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Class").

54.     Plaintiffs, and the other members of the Class, conferred a monetary benefit upon Defendant by purchasing the defective Tonka Dump Truck ride-on toys either directly or through major online or in-person retail outlets. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe and reliable.

55.     Defendant voluntarily accepted and retained these benefits. Defendant manufactured, marketed and distributed the defective ride-on Tonka Dump Truck toys without adequate warnings of the known defect.

56.     The benefit was obtained unlawfully by Defendant distributing a Product prone to having the toy's controller overheat during ordinary use. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

57.     The Defendant received revenues from the sales of these defective Tonka Dump Truck toys at the expense of Plaintiffs and the Class, who would not have purchased the ride-on toys had they been aware of the defect. The labeling and marketing of the Products by Defendants were misleading and caused direct economic harm and risk of injury to Plaintiff and the Class.

58.     Defendant has been unjustly enriched by retaining the revenues derived from the sales of ride-on Tonka Dump Truck toys with defective controllers. Retention of these revenues is inequitable because Defendant failed to disclose the known risks associated with their products, thereby misleading consumers and endangering their safety.

59.     Plaintiffs and the members of the Classes seek restitution of the monies conferred

upon Defendant as a result of their unjust enrichment. Defendant should be required to disgorge the profits obtained from the sale of the Tonka Dump Truck ride-on toys equipped with defective controllers and, as such, seek restitution to Plaintiffs and the Classes, as ordered by the Court.

<u>COUNT II</u>
**BREACH OF EXPRESS WARRANTY**

60.     Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

61.     Plaintiffs brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide (the "Class").

62.     Plaintiffs and each Member of the Class formed a contract with Defendant at the time they purchased the Products.

63.     The terms of the contract included express warranties created by Defendant through affirmative representations, advertising, packaging, labeling, and marketing of the defective Tonka Dump Truck ride-on toys.

64.     Defendant, through these marketing and advertising efforts, expressly warranted that the Products were safe, effective, and fit for their intended purpose. These warranties became part of the basis of the bargain between Plaintiffs, Class Members, and Defendant.

65.     Defendant made these affirmations of quality and safety through product labeling, packaging, and marketing materials. Defendant reinforced and relied upon these warranties by advertising, displaying, and selling the Products to consumers, thereby making its own express representations of the Products' safety and fitness.

66.     Plaintiffs and the Class Members fulfilled all conditions precedent to Defendant's liability under this contract, including purchasing the Products in reliance on Defendant's representations.

67. Defendant breached its express warranties because the Products were defective, prone to having the controllers overheat, and presented a serious fire hazard contrary to their representations. The Products failed to conform to the express affirmations and promises made by the Defendant.

68. Plaintiffs and Class Members would not have purchased the Products had they known the true nature of the risks, including the potential for fire hazards and burn injuries.

69. As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and Class Members suffered and continue to suffer financial damages, injury, and economic losses. They are entitled to compensatory damages, attorneys fees, interest, and any other relief deemed appropriate by the Court.

## COUNT III
## BREACH OF IMPLIED WARRANTY

70. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

71. Plaintiffs bring this claim against Defendants on behalf of themselves and the other Members of the Nationwide Class (the "Class").

72. Defendant is a merchant engaged in the business of manufacturing, distributing, warranting, and/or selling the Products.

73. The Products are goods under the relevant laws, and at all times relevant, Defendant knew or had reason to know of the specific use for which these Products were purchased.

74. Defendant entered into agreements with retailers to distribute and sell the Products to consumers, including Plaintiffs and Class Members, for personal and household use.

75. The implied warranty of merchantability, which applies to all sales of goods, means that Defendant warranted that the Products were fit for their ordinary purpose-- namely, to safely provide Tonka Dump Truck toys without posing unreasonable risks of harm.

76. However, Defendant breached the implied warranty of merchantability because the Products were defective, not fit for their intended use, and posed a risk of having the controllers overheat during ordinary use creating a fire hazard. As a result, they were unfit for their ordinary purpose of safe transportation and play.

77. This implied warranty applies to all purchasers of the Products, including Plaintiffs and Class Members, because they reasonably relied on Defendant's status as merchants and sellers of safe, functional goods.

74. Privity of contract is not required, as Plaintiff and Class Members are the intended beneficiaries of Defendant's implied warranties. Defendant's warranties were created for the benefit of consumers, including Plaintiff and Class Members.

75. Defendant was on notice of the defects through consumer complaints, reports of overheating incidents, and the recall of the Products, yet failed to address these defects before selling the Products to consumers.

76. Had Plaintiffs, Class Members, and other consumers known that the Products posed an overheating and fire risk, they would not have purchased them or would have paid significantly less.

76. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and Class Members suffered and continue to suffer financial harm, injury, and other damages. Plaintiff and the Classes seek all available damages, including

compensatory damages, attorneys' fees, interest, and any other relief deemed appropriate by the Court.

<u>COUNT IV</u>
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

77. Plaintiffs incorporate the allegations set forth in previous Paragraphs as though set forth fully herein.

78. Plaintiffs bring this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Classes").

79. Defendant is a merchant engaged in the sale of goods, including the defective Tonka Dump Truck toys, to Plaintiff and the Class.

80. There was a sale of goods from Defendant to Plaintiffs and Class Members, thereby establishing a commercial relationship between Defendant and consumers.

81. As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendant impliedly warranted that the Products were merchantable and fit for their intended use.

82. However, contrary to these representations, the Products were defective and unfit for their ordinary use, as they posed a significant risk of having the toy's controllers overheat while being used, which was not disclosed to consumers at the time of sale.

83. Defendant breached the implied warranty of merchantability by selling products that were inherently defective and not suitable for their ordinary and intended purpose.

84. Defendant was on notice of this breach, was aware of adverse health and safety risks caused by the controller overheating yet failed to take corrective action before selling the Products.

85. Plaintiffs and Class Members did not receive the goods as bargained for, as the

Products were not merchantable, did not conform to industry standards, and failed to meet the quality and safety expectations of similar goods.

86.    Plaintiffs and Class Members are intended beneficiaries of the implied warranties, as they reasonably relied on Defendant's expertise and reputation as merchants when purchasing the Products.

87.    Plaintiffs and Class Members did not alter the Products, and they used them in the ordinary and intended manner.

88.    The Products were defective at the time they left the exclusive control of Defendant, meaning that Defendant bears responsibility for the defect.

89.    The Products were defectively designed and/or manufactured, making them unfit for their intended purpose and rendering them non-merchantable under applicable laws.

90.    Plaintiffs and Class Members purchased the Products without knowing of the latent defect, which was undiscoverable at the time of purchase but existed when the Products left Defendant's control.

91.    As a direct and proximate result of the defective Products, Plaintiffs and Class Members suffered damages, including, but not limited to, the cost of purchasing the defective Product, loss of use, and other related damages.

92.    Defendant attempted to limit or disclaim their implied warranties, but any such disclaimers are unenforceable and void, as a product that poses safety risks cannot be lawfully sold under the implied warranty of merchantability.

93.    Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT V
### FRAUDULENT CONCEALMENT

94.     Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

95.     Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Class").

96.     Defendant had a duty to disclose material facts to Plaintiffs and Class Members given their relationship as contracting parties and intended users of the Products.

97.     Defendant had superior knowledge about the defective nature of the product at issue, particularly the risk of overheating and catching fire, which made them unfit for ordinary use.

98.     During this time, Plaintiffs and Class Members were using the Products without knowing of these fire risks, reasonably believing that the Products were safe for use.

99.     Defendant knew or should have known about the defect but failed to warn consumers, retailers, or regulators, and continued to sell the Product despite the defect, and either knew or should have known about the risk, particularly if the recall had already been issued.

100.    Defendant failed to disclose these material facts with the intent to induce consumers into purchasing the Products, despite the latent defect. This failure constitutes fraudulent concealment as Defendant intentionally withheld critical safety information that, if disclosed, would have affected consumer purchasing decisions.

101.    Plaintiffs and Class Members reasonably relied on Defendant's failure to disclose, believing that the Products were safe when, in fact, they were not.

102.    Had Plaintiffs and Class Members known the true risks, they would not have purchased the Products or would have paid significantly less.

103.    As a direct and proximate result of Defendant's fraudulent concealment, Plaintiffs and Class Members suffered financial losses, including the cost of purchasing defective Products, the risk of harm, and the devaluation of their purchases.

104.    Because Defendant acted with willful and malicious intent, punitive damages are warranted to deter future misconduct and punish Defendants for knowingly concealing critical safety information from consumers.

## COUNT VI
## STRICT LIABILITY – FAILURE TO WARN

105.    Plaintiffs incorporate the allegations set forth in previous Paragraphs as though set forth fully herein.

106.    Plaintiffs bring this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

107.    Defendant had a duty to warn Plaintiffs and Class Members about the Defect and the true risks associated with the Products.

108.    As the manufacturer, Defendant was in a superior position to know about the defective Products and their dangerous propensity to have the toy's controller overheat. However, Defendant failed to warn consumers, retailers, and regulatory agencies about the risks when it had the opportunity to do so.

109.    Defendant failed to provide adequate warnings regarding the risks of the Products before or at the time of sale, particularly if it continued selling the Products despite knowledge of the recall or other safety concerns.

110.    Defendants had access to critical safety information regarding the fire hazards associated with the Products, yet failed to warn Plaintiffs and Class Members, leaving them unaware of the dangers.

111.    Despite knowing the risks, Defendant did not strengthen their warnings or provide adequate safety disclosures before selling the Products. Instead, Defendant actively concealed or ignored the need for stronger warnings, prioritizing sales over consumer safety.

112.    Plaintiffs and Class Members would not have purchased, chosen, or paid for the Products had they known of the risk of a fire hazard during ordinary use caused by a defective controller. Because Defendant failed to provide proper warnings, consumers were deprived of their right to make an informed purchasing decision.

113.    The Defect proximately caused Plaintiffs' and Class Members' damages, as they purchased and used a Product that posed an unreasonable risk of harm without their knowledge.

114.    Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

<u>COUNT VII</u>
**STRICT LIABILITY – DESIGN DEFECT**

115.    Plaintiffs incorporate the allegations set forth in previous Paragraphs as though set forth fully herein.

116.    Plaintiffs brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Class").

117.    The design of the recalled Huffy Tonka Dump Truck ride-on toys was defective and unreasonably dangerous, making the Products unsafe for consumer use.

118.    The fire risk associated with the controller's defect while Plaintiffs and Class Members' children used the Products caused exposure to a known burn hazard and posed a serious risk of injury.

119.    The design defect rendered the Products not reasonably fit, suitable, or safe for their

intended purpose, violating consumer safety expectations.

120. The risk of a burn hazard outweighed the benefits of the Products, making them unreasonably dangerous to consumers.

121. There were alternatives, safer ride-on toy designs available, including other ride-on toys that did not have overheating controllers or pose a similar fire risk, meaning Defendant had the ability to manufacture a safer product, but failed to do so.

122. Defendant could have implemented safer design modifications that would have reduced or eliminated the fire risk, such as improved thermal management systems, enhanced safety circuits, or better casing materials, but failed to do so.

123. Because the Products were unreasonably unsafe and did not perform as an ordinary consumer would expect, they should not have been sold to consumers.

124. Defendant is strictly liable for selling the defective Product, as strict liability applies to all entities in the chain of distribution.

125. Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

<u>**COUNT VIII**</u>
**NEGLIGENT FAILURE TO WARN**

126. Plaintiffs incorporate the allegations set forth in previous Paragraphs as though set forth fully herein.

127. Plaintiffs bring this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

128. Defendant owed Plaintiffs and Class Members a duty of care to warn of any risks associated with the Products.

129.    Defendant knew or should have known that the defective product posed a significant fire risk associated with a controller susceptible to overheating, but failed to warn Plaintiffs and Class Members.

130.    Defendant had a duty to warn consumers if it had knowledge or reason to know about the defect including through prior consumer complaints, product recalls, or other safety notices, but failed to provide adequate warnings before or at the time of sale.

131.    Plaintiffs and Class Members had no way of knowing about the Product's latent defect, as an ordinary consumer would not expect the Product's controller to overheat during normal use.

132.    Defendant's breach of its duty to warn caused Plaintiffs and Class Members to suffer economic damages and physical injuries.

133.    Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees available under law.

## COUNT IX
## NEGLIGENT DESIGN DEFECT

134.    Plaintiffs incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

135.    Plaintiffs brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Class").

136.    Defendant owed Plaintiffs and Class Members a duty of care to design, manufacture, and sell products that were safe for their intended use.

137.    The design of the recalled Huffy ride-on Tonka Dump Truck was defective and unreasonably dangerous, causing exposure to fire, smoke, and the risk of severe injury or property

damage.

138. The design of the Products rendered them unfit, unsuitable, and unsafe for their intended purpose, as the fire hazard far outweighed any benefits of the Product.

139. There were alternative, safer ride-on toy designs available that did not have the controller overheat during ordinary use, meaning Defendant could have implemented a safer design but failed to do so.

140. Defendant had access to industry knowledge, safety reports, and consumer complaints that should have alerted them to the defective nature of the Products.

141. Defendant was negligent in selling the defective Products, as they either knew or should have known that the design was unreasonably dangerous, particularly if the recall had been issued or customer complaints had been received before further sales.

142. The negligent design of the Product was the proximate cause of Plaintiffs' and Class Members' damages, as it posed an inherent and foreseeable risk of harm that Defendant failed to address.

143. Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## **COUNT X**
## **NEGLIGENCE**

144. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

145. Plaintiffs brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

146. Defendant owed a duty of care to consumers to design, manufacture, distribute, and

sell products that were reasonably safe for their intended use.

147.     Defendant breached this duty by producing and selling a product that was defective, unreasonably dangerous, and unfit for its intended purpose. The model numbers identified in the recall have controllers that overheat during ordinary use and create a burn hazard.

148.     Defendant failed to properly design and test the product to ensure its safety before placing it into the stream of commerce, and negligently sold the product without proper warnings, quality assurance measures, or recalls, despite the known risks.

149.     Defendant knew or should have known that the Tonka Dump Truck ride-on toy had a significant risk of having its controller overheat yet failed to take reasonable steps to prevent foreseeable harm to consumers.

150.     As a direct and proximate result of Defendant's negligence, Plaintiffs suffered economic damages, injuries, and deprivation of the benefit of the bargain, as the product did not perform as reasonably expected and was unsafe for use.

151.     Further, Defendant's negligence directly caused harm to Plaintiffs and Class Members, as it was foreseeable that a poorly designed and untested ride-on toy would have the controller overheat and cause injury. It was also foreseeable that consumers would lose the benefit of their purchase if they received a defective and worthless product.

152.     Plaintiffs and Class Members suffered damages in an amount to be determined at trial and Plaintiffs and Class Members are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Members of the Class

alleged herein, respectfully request that the Court enter judgment in their favor and against the

Defendant as follows:

A.     For an order certifying the Class and naming Plaintiffs as the representative for the Class and Plaintiffs' attorneys as Class Counsel;

B.     For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C.     For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For injunctive relief as pleaded or as the Court may deem proper;

H.     For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.     For an order providing for all other such equitable relief as may be just and proper.

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 5, 2025,                       Respectfully submitted,

/s/ Andrew Baker
Andrew Baker
**The Baker Law Group**
89 E. Nationwide Blvd.
2nd Floor
Columbus, OH 43215
T: (614)-696-7394
F: (614)-228-1862
E: Andrew.baker@bakerlawgroup.net

Paul J. Doolittle (Pro Hac Vice
Forthcoming) **Poulin | Willey |
Anastopoulo, LLC**
32 Ann Street
Charleston, SC 29403
T: (803) 222 – 2222

E: paul.doolittle@poulinwilley.com
   cmad@poulinwilley.com

*Attorneys for Plaintiffs and the Putative Class*